KENJI M. PRICE #10523
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Chief, Criminal Division

MARC A. WALLENSTEIN #10456
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-Mail:  Marc.Wallenstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
NOV 09 2018
at 9 o'clock and 30 min. A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) MAG. NO. 18-01253 RLP |
| | ) |
| Plaintiff, | ) CRIMINAL COMPLAINT |
| | ) |
| vs. | ) |
| | ) |
| ABDURAHMAN (01), | ) |
| DIAN ANDRIYANTO (02), | ) |
| YULI HARYANTO (03), | ) |
| TAUFIK HIDAYAT (04), | ) |
| BUDI MULYANA (05), | ) |
| DENI NURYANTO (06), | ) |
| PURWANTO (07), | ) |
| MAMAN RUKMANA (08), | ) |
| TEGUH IMAM SANTOSO (09), and | ) |
| IBNU FAHMI ZAKI (10), | ) |
| | ) |

Defendants.         )
_____)

# CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

## COUNT 1
### Smuggling Goods from the United States

On or about November 7, 2018, in the District of Hawaii and elsewhere, ABDURAHMAN,[1] DIAN ANDRIYANTO, YULI HARYANTO, TAUFIK HIDAYAT, BUDI MULYANA, DENI NURYANTO, PURWANTO,[2] MAMAN RUKMANA, TEGUH IMAM SANTOSO, and IBNU FAHMI ZAKI, the Defendants, did knowingly attempt to export, from the United States to Indonesia, certain articles and objects, namely, fins from oceanic whitetip sharks, *Carcharhinus longimanus*, contrary to the laws and regulations of the United States, specifically: contrary to the Endangered Species Act, 16 U.S.C. §§ 1538(c)(1) and 1538(g), which makes it unlawful for any person subject to the jurisdiction of the United States to engage in, or attempt to engage in, any trade contrary to the provisions of the Convention on International Trade in Endangered

---

[1] This defendant goes by a single name.
[2] This defendant goes by a single name.

2

Species (CITES), which requires, pursuant to Article IV of the Convention and as implemented at 50 C.F.R. § 23.20, a valid CITES document to engage in international trade in any CITES specimen, including oceanic whitetip sharks.

All in violation of 18 U.S.C. § 554(a).

## COUNT 2
### Lacey Act Fish Trafficking

On or about November 7, 2018, in the District of Hawaii and elsewhere, ABDURAHMAN, DIAN ANDRIYANTO, YULI HARYANTO, TAUFIK HIDAYAT, BUDI MULYANA, DENI NURYANTO, PURWANTO, MAMAN RUKMANA, TEGUH IMAM SANTOSO, and IBNU FAHMI ZAKI, the defendants, did knowingly attempt to export fish, that is: shark fins, which defendant knew were possessed in violation of and in a manner unlawful under law, and which shark fins were in fact possessed in violation of the laws and regulations of the State of Hawaii, specifically: H.R.S. § 188-40.7(a), which renders it unlawful to possess shark fins in Hawaii.

All in violation of Title 16, United States Code, Sections 3372(a)(4), 3372(a)(2)(A), and 3373(d)(1)(A).

I further state that I am a U.S. Fish and Wildlife Special Agent and that this Complaint is based upon the facts set forth in the attached "Affidavit in Support of

//

Criminal Complaint", which is attached hereto and incorporated herein by reference.

                                                                  KEITH SWINDLE
                                                                  Special Agent
                                                                  U.S. Fish and Wildlife Service

Sworn to and subscribed in my presence,
this 9th day of November, 2018.

_____
KEVIN S.C. CHANG*
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) MAG. NO. 18-01253 RLP |
| | ) |
| Plaintiff, | ) AFFIDAVIT IN SUPPORT OF |
| | ) CRIMINAL COMPLAINT |
| | ) |
| vs. | ) |
| | ) |
| ABDURAHMAN (01), | ) |
| DIAN ANDRIYANTO (02), | ) |
| YULI HARYANTO (03), | ) |
| TAUFIK HIDAYAT (04), | ) |
| BUDI MULYANA (05), | ) |
| DENI NURYANTO (06), | ) |
| PURWANTO (07), | ) |
| MAMAN RUKMANA (08), | ) |
| TEGUH IMAM SANTOSO (09), and | ) |
| IBNU FAHMI ZAKI (10), | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

KEITH SWINDLE, being duly sworn, deposes and states as follows:

1. I am a Special Agent with the U.S. Fish and Wildlife Service in Honolulu, Hawaii, and have served in that capacity for more than 17 years. I served as a Field Agent in Sacramento, California from 2001-2002 and in Honolulu, Hawaii from 2002-2012. I served as a Senior Special Agent in the U.S. Fish and Wildlife Service Headquarters in Falls Church, Virginia from 2012-2015, and I am currently the Resident Agent In Charge of the Office of Law

Enforcement, Honolulu. I am responsible for violations of U.S. Fish and Wildlife laws and regulations in Hawaii, and the U.S. territories and possessions in the Pacific. My primary duties are to conduct investigations and oversee investigations conducted by Special Agents and Wildlife Inspectors. The majority of that work involves facilitating legal importation or exportation of fish and wildlife products and investigating illegal importation or exportation of fish and wildlife products to and from the United States and its Territories, pursuant to the Convention on International Trade in Endangered Species (CITES), the Endangered Species Act, the Lacey Act, the Migratory Bird Treaty Act, and a number of other laws that regulate international and interstate transport and commerce in wildlife products. I have investigated numerous violations and arrested or otherwise effected the prosecution of dozens of individuals for unlawful conduct in multiple states across the country and throughout the Pacific.

2.  From a precise date unknown, a number of Indonesian nationals had been working as fisherman and crew members on a Japanese-flagged fishing vessel, Kyoshinmaru #20, some of them for as long as approximately one year.

3.  A local marine navigation corporation in Honolulu had been hired to assist the Indonesian nationals in returning to Indonesia.

4.  On or about November 7, 2018, eighteen (18) Indonesian nationals disembarked the Kyoshinmaru #20, while the vessel was in international waters,

2

more than 12 miles offshore, and boarded a water taxi, where they met a Vessel Agent from the local marine navigation corporation.

5. The Vessel Agent brought the Indonesian nationals from international waters to Pier 36 in Honolulu Harbor, where they met with a representative from U.S. Customs and Border Protection ("CBP"), who had previously been notified of their arrival.

6. Four (4) of the Indonesian nationals were crew members with visas to depart the United States. They were permitted to enter the United States, pursuant to their visas.

7. Fourteen (14) of the Indonesian nationals did not have visas, and with the assistance of the Vessel Agent, they requested Parole to Depart, which is a form of discretionary authority, granted on a case-by-case basis, that allows a person to temporarily enter the United States without a visa, in order to promptly depart. After review by CBP, including a criminal history check, the 14 Indonesian nationals were eventually granted Parole to Depart, and were placed under the supervision of the Vessel Agent, for the purpose of promptly departing on an upcoming flight. The Vessel Agent then took all 18 of the Indonesian nationals to Honolulu International Airport, in order to board previously-ticketed flights to Indonesia, on Al Nippon Airways ("ANA").

8. During routine screening of the Indonesian nationals' checked

luggage by the Transportation Security Administration (TSA), three of their checked bags triggered alarms. Two of those bags were found to contain dried shark fins, which are unlawful to possess in Hawaii.

9. U.S. Fish and Wildlife Service (FWS) Special Agent Jennifer Roth, FWS Special Agent Victoria Owens, FWS Supervisory Wildlife Inspector Anthony Palermo, Wildlife Inspector Pamela Akeo, and myself, working with the TSA and a representative from ANA Airlines, identified approximately 30 pieces of luggage that the 18 Indonesian nationals had checked through to Indonesia, and recalled those pieces of luggage for further inspection.

10. Of those approximately 30 pieces of luggage, 13 were found to contain shark fins. These included cardboard boxes, backpacks, and suitcases. Fins were bundled together, and some were wrapped in foil. Some fins were sealed into clear and opaque plastic bags, such as empty bags of rice, that obscured the contents, and those bags were, in turn, sealed within other opaque bags, apparently to contain odor or otherwise obscure the contents. Some bags were taped shut, and some were sealed with some sort of heat process that created a seam. In total, at least 962 shark fins weighing approximately 190 pounds (89 kilograms) were recovered from the 13 pieces of luggage.

11. Based on my training and experience, dried sharkfin ranges in price from $75 to $650 per kilogram, depending upon quality and species. The 190

pounds of shark fins seized therefore represent approximately $6,695 to $57,850 in street value.

12. SWI Palermo and WI Akeo determined that some of the fins were from oceanic whitetip sharks, *Carcharhinus longimanus*, which is a species listed in, and subject to, the Convention on International Trade in Endangered Species (CITES).

13. 18 U.S.C. § 554(a) makes it unlawful for a person to export articles and objects contrary to the laws and regulations of the United States. The Endangered Species Act, 16 U.S.C. §§ 1538(c)(1) and 1538(g), makes it unlawful for any person subject to the jurisdiction of the United States to engage in, or attempt to engage in, any trade contrary to the provisions of CITES. Article IV of CITES, as implemented at 50 C.F.R. § 23.20, requires a person to have a valid CITES document in order to engage in international trade in any CITES specimen, including oceanic whitetip sharks.

14. None of the Indonesian nationals had a valid CITES document to engage in international trade, in oceanic whitetip sharks or anything else.

15. The 13 pieces of luggage that contained shark fins were checked under the names of ten of the Indonesian nationals. Those individuals are: ABDURAHMAN, DIAN ANDRIYANTO, YULI HARYANTO, TAUFIK HIDAYAT, BUDI MULYANA, DENI NURYANTO, PURWANTO, MAMAN

RUKMANA, TEGUH IMAM SANTOSO, and IBNU FAHMI ZAKI (collectively, "the Defendants").

16. Under my direction, the shark fins were removed from the luggage and seized. Care was taken to ensure that a property receipt with the last name of the individual and the airline baggage claim number corresponding to the checked luggage from which the fins were removed was attached to each bundle of shark fins.

17. Each of the 10 defendants signed forms abandoning the seized items to the United States.

18. The Vessel Agent arranged overnight lodging and transport for all 18 Indonesian nationals.

19. On November 8, 2018, the Vessel Agent brought the 18 Indonesian nationals back to the airport. At the request of FWS, they did not board their scheduled flight, and were transported to the United States Postal Inspection Service's Office for questioning.

20. The 10 defendants and the 8 witnesses were separated into two groups and provided food, water, seats in air-conditioned rooms or vehicles, and access to restroom facilities. All 10 of the defendants and 2 of the 8 witnesses were interviewed with Indonesian-speaking interpreters. All 12 individuals had written *Miranda* warnings read to them by an interpreter and all 12 signed the forms at the

beginning of their respective individual interviews. All 12 individuals had written waiver to legal counsel forms read to them by an interpreter. Three of the defendants (DIAN ANDRIYANTO, BUDI MULYANA, and MAMAN RUKMANA) elected not to sign the written waiver to an attorney and were not interviewed. The other nine signed the legal counsel waiver forms. After *Miranda* warnings or interviews, the 10 Defendants were admitted to the Federal Detention Center, and the eight witnesses were released.

21. On or about November 8, 2018, after waiving his *Miranda* rights verbally and in writing, with the aid of an interpreter, DENI NURYANTO admitted that he knew that shark fins are illegal to possess in Indonesia and many other countries. Although he denied knowing one way or the other whether shark fins were illegal in the United States, he admitted that he should have checked the laws of the United States first.

22. On or about November 8, 2018, after waiving his *Miranda* rights verbally and in writing, with the aid of an interpreter, TEGUH IMAM SANTOSO admitted that he had shark fins and that he gave shark fins to DENI NURYANTO and MAMAN RUKMANA to carry back to Indonesia "for their families" and that NURYANTO and RUKMANA knew that they received shark fins from SANTOSO. SANTOSO admitted to cutting fins off of sharks.

23. On or about November 8, 2018, after waiving his *Miranda* rights

7

verbally and in writing, with the aid of an interpreter, ABDURAHMAN stated that while on the vessel they cut the fins off of live sharks and threw the bodies back. ABDURAHMAN admitted to having fins in his luggage. ABDURAHMAN stated that he uses the internet and Facebook.

24. On or about November 8, 2018, after waiving his *Miranda* rights verbally and in writing, with the aid of an interpreter, TAUFIK HIDAYAT admitted that he knew it was against the law to sell shark fins. HIDAYAT said he ate sharks on the vessel and cut off their fins. He admitted to knowing sharks were a protected species, but did not want dead sharks to go to waste.

25. On or about November 8, 2018, after waiving his *Miranda* rights verbally and in writing, with the aid of an interpreter, W., who did not possess shark fins in his baggage, and who is not charged in this Complaint, said that he knew it was illegal to possess shark fins. He stated that he has known it was illegal to possess shark fins for a long time. He was not sure if the others knew nor why they took the risk. He admitted that while on the ship, they cut fins off sharks, dried the fins in the sun, and threw out the bodies.

26. For the foregoing reasons, there is probable cause to believe that the Defendants have knowingly attempted to export fins from oceanic whitetip sharks, *Carcharhinus longimanus*, contrary to the laws and regulations of the United States, in violation of 18 U.S.C. § 554(a); and have knowingly attempted to export

shark fins unlawful to possess under state law, in violation of the Lacey Act, Title 16, United States Code, Sections 3372(a)(4), 3372(a)(2)(A), and 3373(d)(1)(A).

FURTHER AFFIANT SAYETH NAUGHT.

DATED: Honolulu, Hawaii, November 9, 2018.

KEITH SWINDLE
U.S. Fish and Wildlife Service

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendant above-named committed the charged crime found to exist by the undersigned Judicial Officer at 9:30 a.m. on November 8, 2018.

Sworn to and subscribed in my presence, this 9th day of November, 2018.

KEVIN S.C. CHANG
United States Magistrate Judge